**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CEDRIC LAMONT NORRIS,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **Case No. 09-CV-225-TCK-PJC** |
| ) | |
| **OKLAHOMA DEPARTMENT OF** ) | |
| **CORRECTIONS; ATTORNEY** ) | |
| **GENERAL OF THE STATE OF** ) | |
| **OKLAHOMA,** ) | |
| ) | |
| Respondents. ) | |

**OPINION AND ORDER**

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner is a prisoner and appears *pro se*. Before the Court is Petitioner's petition for habeas corpus relief (Dkt. # 1). Respondents filed a response (Dkt. # 8), and provided the state court records necessary for adjudication of Petitioner's claims (Dkt. ## 9, 10). Petitioner filed a reply (Dkt. # 17). For the reasons discussed below, the Court finds the petition for writ of habeas corpus shall be denied.

*BACKGROUND*

**A.    Factual Background**

Shortly before 5:00 p.m. on February 5, 2005, Ali Banki and Sonny Rostrami were preparing to close the jewelry shop they owned in Sapulpa, Oklahoma. Banki noticed a man, later determined to be Petitioner, outside the door of the shop, smoking a cigarette. The man put the cigarette out, came inside the shop and asked to look at the most expensive diamond bracelet in the store. Banki told him that they did not have what he was looking for, but he could make a bracelet with diamonds. The man indicated that he was prepared to spend money and showed Banki several one

hundred dollar bills. He then went outside to smoke another cigarette, which he put out near the front door before entering the shop again. This time the man asked to look at some loose diamonds. Banki showed him three parcels of loose diamonds that were kept in a Ziploc bag. As Banki began to put the parcels away, the man leaned across the counter and grabbed one of the parcels of diamonds, worth approximately $12,000. He took off running. Banki and Rostrami chased the robber, and watched him drive away in a truck that was behind the shopping center where the store was located. They called police and described the robber. The officers collected fingerprints from the countertop, and DNA evidence from the cigarette butts outside the door of the shop. After an investigation, the police determined that Petitioner was a suspect in the robbery. He was arrested in Dallas, Texas, a few weeks after the crime.

**B.     Procedural history**

On February 16, 2005, in Creek County District Court, Case No. CF-2005–69, Petitioner was charged with Robbery by Force or Fear, after former conviction of three felonies. Dkt. # 10-6, O.R. at 1-3. At the conclusion of a jury trial, Petitioner was convicted and sentenced to sixty (60) years imprisonment and a $10,000.00 fine. Petitioner represented himself *pro se* at trial, but was assisted by standby counsel, Anne Darnell.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Alecia George, he raised three (3) propositions of error:

Proposition I:     Mr. Norris' judgment and sentence must be reversed and his case remanded for a new trial because the record does not reflect the required knowing, intelligent and voluntary waiver of his right to counsel by Mr. Norris.

Proposition II:    Insufficient evidence was presented to prove the element of force beyond a reasonable doubt.

2

>   Proposition III:   Mr. Norris' sentence was improperly enhanced with two prior misdemeanors.

(Dkt. # 8, Ex. 1). Petitioner filed a *pro se* supplemental direct appeal brief, identifying the following three (3) propositions[1] of error:

>   Proposition IV:   Violation of Interstate Compact Agreement on Detainers.
>
>   Proposition V:   Insufficient evidence to sustain robbery by force or fear.
>
>   Proposition VI:   Officers failed to respect defendant's right to remain silent and insufficient evidence was presented to prove that Mr. Norris waived any of his constitutional rights/Miranda warning.

(Dkt. # 8, Ex. 2). In an unpublished opinion, filed April 11, 2008, in Case No. F-2006-1303 (Dkt. # 8, Ex. 5), the OCCA rejected all claims and affirmed Petitioner's conviction and sentence. There is no evidence that Petitioner filed a petition for writ of certiorari at the United States Supreme Court. Nor did he file an application for post-conviction relief in state court.

Petitioner filed his federal habeas corpus petition on April 15, 2009 (Dkt. # 1). He also filed a supporting brief (Dkt. # 2). Petitioner raises five (5) grounds of error, as follows:

>   Ground 1:   Petitioner was denied effective assistance of counsel, when trial court failed to inquire into motion to substitute counsel.
>
>   Ground 2:   Petitioner did not knowingly, intelligently, and voluntarily waive his right to counsel - was forced to proceed *pro se*.
>
>   Ground 3:   Insufficient evidence was presented to prove the element of force beyond a reasonable doubt.
>
>   Ground 4:   State violated Interstate Agreement on Detainer Act. Article 4(c) 120 day provision.

---

[1] Although Petitioner identified his *pro se* claims as Propositions 1, 2, and 3, the Court has numbered them sequentially following the three propositions raised by his direct appeal counsel.

3

   Ground 5:  Court erred in admitting police statement.

See Dkt. # 1. In response to the petition, Respondent argues Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d) and that the ineffective assistance of counsel claim is subject to a procedural bar. See Dkt. # 8.

## *ANALYSIS*

**A. Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Unless otherwise noted below, Petitioner fairly presented the substance of his claims to the OCCA on direct appeal. The exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied as to the claims presented on direct appeal.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B. Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court

applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**1. Decision to represent himself** *pro se* **(grounds 1 and 2)**

In his first ground for relief, Petitioner claims he was denied the effective assistance of trial counsel when the trial court denied his motion to substitute counsel without inquiring into the merits of the motion. In his ground two claim, he contends that his decision to waive his right to counsel was not knowingly, intelligently and voluntarily made, and he was forced to proceed *pro se* when the trial court refused to address the merits of his motion to substitute counsel. The OCCA adjudicated these claims on direct appeal. In rejecting the claims, the OCCA found as follows:

> Having reviewed the totality of the circumstances, we find that the trial court adequately advised Norris about the dangers of self-representation and that his waiver of counsel was valid. *See Braun v. State*, 1995 OK CR 42, ¶ 10, 909 P.2d 783, 787; *Stevenson v. State*, 1985 OK CR 74, ¶ 9, 702 P.2d 371, 374-75.

Dkt. # 8, Ex. 5 at 2. The Braun case cited by the OCCA correctly sets forth the standards required to assure a defendant knowingly and intelligently waives his right to counsel. Both Braun and Stevenson rely on the landmark Supreme Court case of Faretta v. California, 422 U.S. 806 (1975) which compels the trial court to make sure the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he 'knows what he is doing and his choice is made with eyes open.'" Faretta, 422 U.S. at 835 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)).

5

The record reflects that Petitioner filed a motion to substitute counsel approximately three weeks before his scheduled trial date,[2] citing a conflict of interest with his appointed counsel, Anne Darnell. See Dkt. # 10-6, O.R. at 54-58. At a motion hearing on other matters one week later, the trial judge acknowledged Petitioner's filing of the motion, and advised Petitioner that she would not appoint substitute counsel. The judge explained that if she allowed Petitioner's counsel to withdraw, then Petitioner could either hire his own lawyer or represent himself. Dkt. # 10, Trans. Mot. Hr'g 10/2/2006 at 7. During the hearing, Petitioner informed his counsel that it was his desire to proceed *pro se*. Id. at 10. The judge said she would give Petitioner time to think about his request and she would make a decision by October 11. Id. at 13. On October 12, 2006, the trial judge conducted a lengthy colloquy with Petitioner regarding his decision to proceed *pro se*. She found that Petitioner was competent to waive his right to counsel and elect to represent himself. See Dkt. # 10-1, Trans. Mot Hr'g 10/12/2006 at 3-14. She also appointed Anne Darnell as standby counsel for Petitioner. Id. at 15.

In support of his first proposition of error, Petitioner cites United States v. Vargas, 316 F.3d 1163 (10th Cir. 2003), United States v. Lott, 310 F.3d 1231 (10th Cir. 2002), and cases from other circuits, to support his position that the trial court erred in denying his motion for substitution of counsel without further inquiry. See Dkt. # 17 at 2. Petitioner's argument is flawed, however, because his trial judge did conduct an inquiry into Petitioner's dissatisfaction with counsel. That inquiry was sufficient to explore and understand his concerns. See Dkt. # 10, Trans. Mot. Hr'g 10/2/2006 at 7; Dkt. # 10-1, Trans. Mot Hr'g 10/12/2006 at 3-14. As to Petitioner's second ground

---

[2] Petitioner advises that he first asked for substitute counsel at a pre-trial hearing on August 28, 2006, but the trial judge advised him that he would have to file a written application. See Dkt. # 2 at 5.

of error, the record demonstrates that the trial judge thoroughly examined Petitioner before determining that his decision to represent himself and waive counsel was made voluntarily and knowingly. Dkt. # 10, Trans. Mot. Hr'g 10/2/2006 at 11-13; Dkt. # 10-1, Trans. Mot. Hr'g 10/12/2006 at 3-8. Further, the trial judge explained to Petitioner the dangers and disadvantages of a waiver. Id. Based upon review of the total circumstances of Petitioner's case, this Court concludes that the trial court adequately examined Petitioner before finding that he was not entitled to substitution of counsel but could represent himself *pro se* at his trial. The OCCA's rejection of Petitioner's claims regarding this issue was not an unreasonable application of Supreme Court law, nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Petitioner has not demonstrated that he is entitled to habeas corpus relief on either ground one or ground two.

**2. Insufficient evidence (ground 3)**

In his third ground for relief, Petitioner argues that the state presented insufficient evidence to support his conviction for robbery by force or fear. As he argued at trial and on direct appeal, Petitioner contends that the victims were not in fear and there was no force used in the stealing of the diamonds. Citing Coddington v. State, 142 P.3d 437, 455 (Okla. Crim. App. 2006), and Spuehler v. State, 709 P.2d 202 (Okla. Crim. App. 1985), the OCCA found that the evidence was sufficient to support Petitioner's conviction because, "[a] rational trier of fact could find beyond a reasonable doubt that Norris used some force to get the parcel containing diamonds from the clerk's hand." Dkt. # 8, Ex. 5 at 2.

In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319

(1979). "This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004) (citing Jackson, 443 U.S. at 319). In other words, it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." Jackson, 443 U.S. at 319.

The Court finds that the evidence was sufficient for a rational fact-finder to have found beyond a reasonable doubt that Petitioner was guilty of Robbery by Force or Fear. Upon review of the evidence in the light most favorable to the prosecution, the Court finds sufficient evidence supported the conviction. To convict Petitioner of this crime, the State had to prove beyond a reasonable doubt that Petitioner committed a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear. Okla. Stat. tit. 21, §791. Under Oklahoma law, the degree of force employed is immaterial. Okla. Stat. tit. 21, § 793. Further, the jury was instructed that force, of any degree used to obtain possession of the property was sufficient. See Dkt. # 10-6, O.R. at 138, Instruction No. 13. Banki testified that Petitioner grabbed the parcel of diamonds from his hand, and specifically stated that, "[h]e lean[ed] over fast and grabbed the Ziploc, but my hand completely shut on the Ziploc so he could grab one of the parcels from the three and run away." Dkt. # 10-4, Tr. Trans. Vol. I at 172. The OCCA found that some force was used to get the diamonds from the clerk's hands. Thus, Petitioner's claim that the State did not produce sufficient evidence for his conviction is without merit.

The Court concludes that the evidence was sufficient to support Petitioner's conviction, and the OCCA's resolution of Petitioner's challenge to the sufficiency of the evidence was not contrary

to or an unreasonable application of Supreme Court law, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2). See Dockins, 374 F.3d at 939 (recognizing that the Tenth Circuit has yet to decide whether sufficiency of the evidence on habeas review presents a question of law or fact). Petitioner is not entitled to habeas corpus relief on this claim.

### 3. Violation of IADA (ground 4)

In ground 4, Petitioner alleges that his conviction was obtained in violation of the Interstate Agreement on Detainers Act (IADA). In rejecting the claim on direct appeal, the OCCA determined that:

> Norris has not shown that his Creek County prosecution was based on a detainer, triggering the provisions of the Interstate Agreement on Detainers Act (IADA), because his appearance in Creek County was obtained by writ of habeas corpus ad prosequendum. *See Rackley v. State*, 1991 OK CR 70, ¶¶ 8-9, 814 P.2d 1048, 1050-51. Norris has cited no authority that the IADA is binding in this situation. We find that the trial court did not err in denying Norris's motion to dismiss for violation of the IADA under the circumstances of this case and deny this claim.

Dkt. # 8, Ex. 5 at 3.

"A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." Carchman v. Nash, 473 U.S. 716, 719 (1985) (citations omitted). A prisoner's presence at trial can be secured by means of a writ of habeas corpus ad prosequendum. However, a writ of habeas ad prosequendum, directing the production of a prisoner for trial is not a detainer within the meaning of the IADA, and does not trigger application of the time limits imposed by the IADA. United States v. Mauro, 436 U.S. 340, 341 (1978).

Petitioner fails to offer any factual support for his claim that he appeared in Creek County pursuant to a detainer. The Court has reviewed the original record provided by the parties in this

case. That record confirms that Petitioner was summoned to court in Creek County pursuant to a writ of habeas corpus ad prosequendum. See Dkt. # 10-6, O.R. at 10. In light of that record, the Court finds Petitioner has not demonstrated that the OCCA's decision was an unreasonable application of Supreme Court law, or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Habeas corpus relief is denied on Petitioner's ground 4 claim.

### 4. Improper admission of incriminating statement, fingerprint and DNA evidence (ground 5)

In ground five, Petitioner complains that the improper admission of evidence at his trial violated his constitutional rights under the Fifth Amendment. See Dkt. # 2. First, he contends that the police who arrested him in Dallas improperly elicited an incriminating statement from him after he invoked his Miranda[3] right to remain silent. Id. He also complains that both fingerprint and DNA evidence should have been suppressed. Id. These evidentiary issues, insofar as they were raised on direct appeal, were rejected by the OCCA. See Dkt. # 8, Ex. 5.

   *a. Incriminating statement*

Captain Mike Reed and Sergeant Fred Clark from the Sapulpa Police Department interviewed Petitioner in Dallas at the time of his arrest. Sergeant Clark testified that Captain Reed read Petitioner his Miranda rights. See Dkt. # 10-4, Tr. Trans. Vol. I at 203. When asked at trial whether Petitioner made any statements to the two officers, Sergeant Clark testified as follows:

> During the conversation after he was read his Miranda, one statement that he did make, that he told us that, you know, he was a lifelong criminal; that he only stole

---

[3]   Miranda v. Arizona, 384 U.S. 436, 444 (1966) (finding that statements made by a defendant during custodial interrogation could not be used at trial unless the defendant was first advised of his right to remain silent, his right to an attorney, and that his statements may be used against him).

> from people that had insurance so they got their money back; he didn't steal from - -
> poor people, just people that would get reimbursed, basically, for what he took.

Id. at 207. When asked if any coercion was applied to Petitioner to get him to make that statement, or whether it was in response to a question posed by one of the police officers, Sergeant Clark responded that it was a spontaneous statement offered by Petitioner and was not in response to any questioning. Id. at 207-08. Petitioner contends that the jury should not have heard any testimony regarding his statements made to the officers when he was arrested in Dallas.

In rejecting this claim, the OCCA found that the trial court did not err in admitting Petitioner's spontaneous statement because there was no evidence that it was in response to express questioning or its functional equivalent. Dkt. # 8, Ex. 5 at 3. To determine whether a statement is spontaneous, the question is whether the statement was made in response to express police questioning or its functional equivalent. Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). The functional equivalent of express questioning refers to any words or actions, other than those normally attendant to arrest, that the police should know are reasonably likely to elicit an incriminating response. Id. at 301. Petitioner has failed to provide any argument that his statements were not spontaneous or that they was made in response to the officers' questioning or functional equivalent. Because Petitioner has not demonstrated that the OCCA's ruling was an unreasonable application of Supreme Court law, he is not entitled to relief on this portion of his ground five claim.

### *b. Fingerprint evidence*

Next, Petitioner argues that the fingerprints taken from him in Dallas after he invoked his right to remain silent should have been suppressed at trial because they were "illegally obtained." See Dkt. # 2 at 25-C. Further, he claims the evidence should not have been admitted because he was not advised of his right to counsel, as required by Miranda. Petitioner's claim concerning the fingerprint evidence was not raised on direct appeal. Accordingly, this portion of his claim is unexhausted. Nonetheless, habeas relief may be denied on the merits. 28 U.S.C. § 2254(b).

The Court finds Petitioner's challenge to the admission of fingerprint evidence based on a violation of Miranda lacks merit. Assuming without finding that the fingerprint evidence was obtained in violation of Miranda and, therefore, improperly admitted, the Court finds the error was harmless. In Fry v. Pliler, 551 U.S. 112 (2007), the Supreme Court held that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht." Fry, 551 U.S. at 121. Under the Brecht standard, a court must determine whether an error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 631, 638 (1993) (quotation omitted). An error has a "substantial and injurious effect" if a court is "in 'grave doubt' about the effect of the error on the jury's verdict." Bland v. Sirmons, 459 F.3d 999, 1009 (10th Cir. 2006) (quoting O'Neal v. McAninch, 513 U.S. 432, 435 (1995)). "'Grave doubt' exists where the issue of harmlessness is 'so evenly balanced that [we are] in virtual equipoise as to the harmlessness of the error.'" Id. at 1009-10 (quoting O'Neal, 513 U.S. at 435). Relevant factors a court may consider in a harmlessness analysis include the importance of the evidence to the government's case, whether the evidence was cumulative, whether there is other evidence corroborating or contradicting

12

the evidence, and the strength of the government's case. Cf. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (listing factors to consider when conducting harmless-error analysis under Chapman). In this case, the evidence against Petitioner was overwhelming. Eyewitnesses identified Petitioner as the robber. The robbery victims observed Petitioner discard cigarette butts outside the jewelry store. DNA samples obtained from those cigarette butts matched Petitioner's DNA. In light of the strength of the State's evidence, the fingerprint evidence was cumulative. Petitioner cannot demonstrate that any error in its admission had "a substantial and injurious effect or influence in determining the jury's verdict," as required under Brecht. Petitioner is not entitled to habeas corpus relief on his claim challenging the admission of fingerprint evidence.

### c. DNA evidence

Petitioner also argues that DNA evidence taken from him in Dallas after he invoked his right to remain silent should have been suppressed at trial because it was "illegally obtained." See Dkt. # 2 at 25-C. Petitioner raised this claim on direct appeal. The OCCA determined the claim was without merit, finding as follows:

> Nor did the court err in admitting the saliva sample that was collected pursuant to a search warrant. Assuming, arguendo, that asking for the saliva sample after Norris invoked his right to counsel was the functional equivalent of express questioning, the request yielded nothing in this case because Norris refused and required the officers to obtain a search warrant. Norris can show no prejudice and this claim must be denied.

Dkt. # 8, Ex. 5 at 4. Petitioner fails to offer legal support or argument to demonstrate that the OCCA's ruling was an unreasonable application of Supreme Court law, or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). As determined by the OCCA, Petitioner's buccal swab was ultimately obtained pursuant to a search warrant. See Dkt. # 10-4, Tr. Trans. Vol. I at 232; Dkt. # 10-6, O.R. at 99-107. Therefore, he is not entitled to habeas corpus relief on this claim.

**C. Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the OCCA was debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. Petitioner's motion for a certificate of appealability shall be denied.

*CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for a writ of habeas corpus (Dkt. #1) is **denied**. A separate judgment shall be entered in this matter. A certificate of appealability is **denied**.

**DATED** this 7th day of November, 2012.

TERENCE KERN
United States District Judge